```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                    AUSTIN DIVISION

 3  UNITED STATES OF AMERICA    ) Docket No. A 12-CR-210(3) SS
                                )
 4  vs.                         ) Austin, Texas
                                )
 5  JOSE TREVINO-MORALES        ) September 5, 2013

 6
                      TRANSCRIPT OF SENTENCING
 7              BEFORE THE HONORABLE SAM SPARKS

 8  APPEARANCES:

 9  For the United States:    Mr. Daniel M. Castillo
                              Ms. Michelle E. Fernald
10                            Mr. Douglas W. Gardner
                              Assistant U.S. Attorneys
11                            816 Congress Avenue, Suite 1000
                              Austin, Texas 78701
12
                              Ms. Diana Cruz-Zapata
13                            Assistant U.S. Attorney
                              601 NW Loop 410, Suite 600
14                            San Antonio, Texas 78216

15  For the Defendant         Mr. Kirk F. Lechtenberger
                              2525 McKinnon Street, Suite 420
16                            Dallas, Texas 75201

17  Interpreter:              Ms. Cristina Helmerichs

18  Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
                              501 West 5th Street, Suite 4153
19                            Austin, Texas 78701
                              (512)391-8792
20

21

22

23

24

25  Proceedings reported by computerized stenography, transcript
    produced by computer.
```

| | | |
|---|---|---|
| 13:59:36 | 1 | THE COURT:  Mr. Lechtenberger. |
| 13:59:38 | 2 | MR. LECHTENBERGER:  Yes, your Honor. |
| 13:59:39 | 3 | THE COURT:  I want to get the record straight because |
| 13:59:41 | 4 | there's a couple of funny things that went on. |
| 13:59:44 | 5 | At one period of time, Mr. Finn and Ms. Williams, or |
| 13:59:53 | 6 | through Mr. Finn's office, forwarded an e-mail of objection or an |
| 13:59:58 | 7 | objection to the probation department and then, orally said that |
| 14:00:03 | 8 | he was not going to file it, and it was not filed; but it was |
| 14:00:14 | 9 | considered by the probation officer because at the time of his |
| 14:00:17 | 10 | original report, that's all he had. |
| 14:00:20 | 11 | And then, I've received from you, which I'm going to |
| 14:00:24 | 12 | hand to the clerk, but it's simply an e-mail from you indicating |
| 14:00:28 | 13 | that those objections, whatever they were, were withdrawn and |
| 14:00:31 | 14 | replaced with the ones that you filed.  Is that correct? |
| 14:00:35 | 15 | MR. LECHTENBERGER:  Yes, sir.  That is. |
| 14:00:36 | 16 | THE COURT:  Okay.  I just wanted to make sure of that |
| 14:00:38 | 17 | as we proceeded on. |
| 14:00:39 | 18 | MR. LECHTENBERGER:  I had coordinated that with your |
| 14:00:42 | 19 | U.S. probation officer, and I understood that was the preferred |
| 14:00:44 | 20 | process by the Court. |
| 14:00:45 | 21 | THE COURT:  And it was appropriate. |
| 14:00:47 | 22 | MR. LECHTENBERGER:  Yes, sir. |
| 14:00:48 | 23 | THE COURT:  It's just I want the record to so reflect. |
| 14:00:52 | 24 | All right.  The probation department -- Mr. Trevino, |
| 14:00:57 | 25 | have you gone over with your lawyer the presentence |

| | | |
|---|---|---|
| 14:01:00 | 1 | investigation? |
| 14:01:01 | 2 | DEFENDANT TREVINO-MORALES:  Yes, sir. |
| 14:01:02 | 3 | THE COURT:  The probation department determined under |
| 14:01:12 | 4 | the guidelines a maximum base 43, with a criminal history of I, |
| 14:01:18 | 5 | for a range of way over the statutory maximum of 240 months. |
| 14:01:31 | 6 | I have no objections from the government.  I have five |
| 14:01:37 | 7 | objections from the defense.  First, that the base should be |
| 14:01:44 | 8 | between one million-seven-plus for a level of 16, which would -- |
| 14:01:53 | 9 | when you add the enhancements that are admitted would end up |
| 14:01:57 | 10 | being a 24, and a guideline range of 78 to 97 months, contesting |
| 14:02:16 | 11 | the 20 million-plus guideline.  We've heard all of the evidence |
| 14:02:22 | 12 | on that. |
| 14:02:22 | 13 | And then, an objection on 2S1.(1)(b)(1) contesting that |
| 14:02:32 | 14 | Mr. Trevino did not know he was dealing with drug money.  I won't |
| 14:02:36 | 15 | even hear arguments on that.  I'll overrule that.  Sophisticated |
| 14:02:41 | 16 | laundering, I've already overruled.  So, counsel, I'd like to |
| 14:02:48 | 17 | hear your argument on base and the role. |
| 14:02:50 | 18 | MR. LECHTENBERGER:  Your Honor, probably the best |
| 14:02:51 | 19 | argument I could make is what Agent Pennington said.  Having been |
| 14:02:57 | 20 | here and hearing the Court address some of the unnamed |
| 14:03:01 | 21 | codefendants/confidential informants, it seems to me that what |
| 14:03:06 | 22 | Agent Pennington said effective amount, give or take, of $2 |
| 14:03:11 | 23 | million, that dovetails exactly into what I've said in objection |
| 14:03:14 | 24 | number one.  I obviously anticipate the government will say that |
| 14:03:16 | 25 | relevant conduct is in play, that we need to consider what other |

| | | |
|---|---|---|
| 14:03:20 | 1 | codefendants have said.  They may have used the word "conspiracy" |
| 14:03:24 | 2 | with you. |
| 14:03:24 | 3 | But at the end of the argument, Judge, I think the best |
| 14:03:27 | 4 | way to approach this is a hard and fast number, which we have, |
| 14:03:30 | 5 | could either be 1.734 million, which is what I've suggested in |
| 14:03:34 | 6 | one or what Agent Pennington said in redirect by Mr. Gardner of |
| 14:03:40 | 7 | $2 million. |
| 14:03:44 | 8 | THE COURT:  Well, what do I do with the fact that we've |
| 14:03:47 | 9 | got over $16 million in purchases, over $8 million, whether |
| 14:03:57 | 10 | conservative or not, in expenses and all the horses end up with |
| 14:04:00 | 11 | Mr. Trevino? |
| 14:04:04 | 12 | MR. LECHTENBERGER:  As far as the expenses, if I could |
| 14:04:06 | 13 | go in reverse order, Judge, a lot of those expenses, from what |
| 14:04:09 | 14 | I've read, had to do with horse dentistry, with upkeep, with |
| 14:04:14 | 15 | veterinarian care.  I would argue that most of those, if not all |
| 14:04:18 | 16 | of those expenses actually were legitimate in regards to |
| 14:04:23 | 17 | fundamentally maintaining a horse stable in a professional |
| 14:04:26 | 18 | capacity. |
| 14:04:26 | 19 | THE COURT:  Well, let's just throw out the idea, then, |
| 14:04:28 | 20 | that we know that the expenses were paid.  We know -- I say we. |
| 14:04:34 | 21 | I'm sure you've reviewed the transcript. |
| 14:04:36 | 22 | MR. LECHTENBERGER:  Yes, sir. |
| 14:04:37 | 23 | THE COURT:  We know how they were paid over the period |
| 14:04:40 | 24 | of time.  But on the government's argument, notwithstanding that |
| 14:04:48 | 25 | whatever they're going to argue, it seems to me that it's a whole |

14:04:53   1   lot closer to $20 million than 1.7.  And all of the evidence that

14:04:59   2   I heard at trial is that Mr. Trevino ended up with the better

14:05:05   3   horses from scratch, that is, from nothing that he had into a big

14:05:12   4   ranch with all the horses on it.

14:05:17   5          Notwithstanding all of the other arguments that good

14:05:21   6   lawyers have made, those two factors I wanted to give you an

14:05:27   7   opportunity to make your best argument on.

14:05:31   8          MR. LECHTENBERGER:  Judge, could I have a moment?

14:05:32   9          THE COURT:  Yes, sir.

14:05:50   10          MR. LECHTENBERGER:  Your Honor, the best way I can

14:05:52   11   phrase it, I believe that with the evidence that I've read that I

14:06:00   12   understand, not being at trial, but having gone through the

14:06:02   13   transcript, is a lot of the witnesses in my opinion perhaps did

14:06:07   14   not have meritorious testimony, and obviously the twelve folks on

14:06:11   15   the jury saw otherwise.  But from a credibility standpoint,

14:06:16   16   what's been brought up by some of the co-counsels here, I don't

14:06:19   17   think lends itself to credibility of necessarily these

14:06:22   18   individuals saying these things.

14:06:23   19          I note that Mr. Trevino -- hopefully was brought out

14:06:27   20   through testimony that Mr. Trevino has been around horses at a

14:06:30   21   young age from five years old.  I think one of the character

14:06:34   22   letters did talk about that.  So, again, full circle here, Judge,

14:06:38   23   probably the best way I could phrase it is that I don't

14:06:41   24   necessarily think that the $20 million represents fairly and

14:06:45   25   accurately what his relevant conduct is, notwithstanding what the

14:06:48    1    codefendants have said, or the coconspirators, or the witnesses

14:06:52    2    for the government.

14:06:54    3            THE COURT:  I'll hear from the government on the

14:06:56    4    objection.

14:06:57    5            MR. GARDNER:  On the amount, your Honor, the Court has

14:07:00    6    heard and seen the exhibits that came into evidence, both the

14:07:04    7    course of trial and here today.  And I'm just looking at my

14:07:08    8    notes, majority of the expenses were all for the benefit of the

14:07:11    9    horses maintained by Jose Trevino's ranch, including 3.9 million

14:07:16   10    of his own, 1.2 million, Southwest Stallion Station.  I believe

14:07:20   11    the Court heard that most of the horses there were maintained by

14:07:23   12    Jose Trevino.  And, also, as the Court is well aware, that over

14:07:27   13    400 horses of this organization's stock were in Mr. Jose

14:07:32   14    Trevino's possession.

14:07:34   15            And finally, I'd like to point out, Judge, I don't

14:07:36   16    think there's any dispute that Jose Trevino is -- being the blood

14:07:38   17    brother of the leader of the entire Zetas organization was the

14:07:41   18    leader on this side of the border managing the horses.  I think

14:07:44   19    the fact that, as the Court noted, he gets the most valuable

14:07:47   20    horses transferred into his name, that indicates that he is the

14:07:52   21    director, if you will, for the United States subsidiary of the

14:07:56   22    Zetas money-laundering organization.

14:07:58   23            And, again, I think with the testimony of Special Agent

14:08:01   24    Pennington today, that 25 million is a very conservative number.

14:08:06   25    And as Mr. Lechtenberger points out, we are asking the Court to

| | | |
|---|---|---|
| 14:08:10 | 1 | consider not only as directly attributable to Jose Trevino, the |
| 14:08:14 | 2 | government's opinion is over $20 million, but as the leader of |
| 14:08:18 | 3 | the organization, 1.3, he should be accountable for all of it. |
| 14:08:24 | 4 | THE COURT:  All right.  How about role?  No, no.  He |
| 14:08:31 | 5 | hasn't had the opportunity yet. |
| 14:08:33 | 6 | MR. GARDNER:  Oh. |
| 14:08:35 | 7 | THE COURT:  Do you wish to argue role? |
| 14:08:39 | 8 | MR. LECHTENBERGER:  Judge, I think I'm going to stand |
| 14:08:41 | 9 | with what I've said before to you. |
| 14:08:43 | 10 | THE COURT:  All right.  Do you have anything else that |
| 14:08:45 | 11 | you want to say on the role? |
| 14:08:47 | 12 | MR. GARDNER:  Not with respect to the objections, your |
| 14:08:49 | 13 | Honor. |
| 14:08:51 | 14 | THE COURT:  Well, I have no trouble at all from the |
| 14:08:53 | 15 | evidence, particularly in the trial, that the evidence before me |
| 14:08:56 | 16 | that hasn't been ruled out that the appropriate factual finding |
| 14:09:09 | 17 | with regard to the calculated base is easily over 20 million, and |
| 14:09:13 | 18 | I overrule that objection.  The objection under 2S1.(1)(b)(1), |
| 14:09:19 | 19 | I've already overruled.  Sophisticated laundering objection, I've |
| 14:09:24 | 20 | already ruled. |
| 14:09:26 | 21 | On role, Mr. Trevino obviously exercised leadership |
| 14:09:33 | 22 | over his wife and his daughter, who also have been involved in |
| 14:09:38 | 23 | this lawsuit.  His brother and at least, what, 13, 14 employees |
| 14:09:46 | 24 | running the property, keeping the house.  I have no trouble |
| 14:09:53 | 25 | finding the role.  I'll overrule that objection, which leaves the |

| | | |
|---|---|---|
| 14:10:00 | 1 | calculation of the probation officer as it is. |
| 14:10:10 | 2 | Do you know of any legal reason, sir, we shouldn't |
| 14:10:13 | 3 | proceed with sentencing? |
| 14:10:14 | 4 | MR. LECHTENBERGER:  No, sir.  No legal reason, your |
| 14:10:16 | 5 | Honor. |
| 14:10:16 | 6 | MR. GARDNER:  Nor does the government, your Honor. |
| 14:10:17 | 7 | THE COURT:  Mr. Trevino, you have the right to say |
| 14:10:19 | 8 | anything that you wish.  You do not -- you're not required to say |
| 14:10:23 | 9 | anything, but you have that opportunity and I would offer to you |
| 14:10:27 | 10 | now. |
| 14:10:27 | 11 | DEFENDANT TREVINO-MORALES:  Thank you, your Honor. |
| 14:10:28 | 12 | I appreciate your opportunity you give me today.  On my |
| 14:10:32 | 13 | behalf, I want to say that I'm very sorry to be in here.  I've |
| 14:10:41 | 14 | been embarrassed already.  And that I want to say that according |
| 14:10:47 | 15 | to this -- if I might start from this Tempting Dash, the horse |
| 14:10:53 | 16 | that I bought for my wife and myself, and that from there on, |
| 14:10:58 | 17 | anything that I touch includes winning from race tracks to a |
| 14:11:03 | 18 | horse that I sold.  It all includes winning $4.2 million thrown |
| 14:11:10 | 19 | in from September 2009 until to date; and that from there, I make |
| 14:11:18 | 20 | expenses towards taking care of animals, breeding the animals, |
| 14:11:22 | 21 | feeding the animals. |
| 14:11:24 | 22 | And those $4.2 million, 2.6 were race earnings.  And |
| 14:11:32 | 23 | like I said, I'm very sorry.  And that it was in the trial that |
| 14:11:39 | 24 | I'm a Zeta.  It was proved in trial that I don't have any |
| 14:11:43 | 25 | aggressive conduct to anybody.  It was proved at trial that all I |

| | | |
|---|---|---|
| 14:11:48 | 1 | did was working.  Since all my life, I've been doing like twelve |
| 14:11:53 | 2 | years prior to this 2009, building schools for the state of Texas |
| 14:11:58 | 3 | from elementary all the way to college through different |
| 14:12:01 | 4 | companies.  So I was pretty much and still am real proud of that, |
| 14:12:09 | 5 | building for the future of the kids of our country, and I always |
| 14:12:17 | 6 | tell my kids to be proud of that and take advantage of what we |
| 14:12:19 | 7 | built. |
| 14:12:23 | 8 | And that I feel, too, that my defense compromised my |
| 14:12:29 | 9 | defense.  The only attorney that I have -- only one contract |
| 14:12:32 | 10 | between Mr. David Finn, who I know that he fails me a lot because |
| 14:12:37 | 11 | out of 53 over witnesses, he only crossed eight.  And he kind of |
| 14:12:45 | 12 | believed that his assistant was no part of his legal firm to |
| 14:12:49 | 13 | trial this case for him.  When I hired him to do that and he put |
| 14:12:53 | 14 | all responsibility on the assistant and he only -- I mean, I can |
| 14:12:59 | 15 | say that in ten months prior to trial, he only come and visit me |
| 14:13:02 | 16 | ten times, none of them with any discovery at all.  None of them |
| 14:13:07 | 17 | with any straight to my defense.  I just want to bring it up to |
| 14:13:12 | 18 | your attention, your Honor. |
| 14:13:13 | 19 | Thank you for listening to me.  But I think I was |
| 14:13:17 | 20 | misrepresented big time.  And that I was in my right to present |
| 14:13:25 | 21 | my witnesses, which we submitted on the 15th of April, and by the |
| 14:13:29 | 22 | 18th, I provided funds to Mr. Finn to bring those witnesses to |
| 14:13:36 | 23 | trial.  On the April the 30th at 5:55 p.m., your Honor, I asked |
| 14:13:44 | 24 | defense if we're ready for witnesses, and they confirmed that. |
| 14:13:51 | 25 | And at Mr. Gardner request, he said that -- he asked my defense |

| | | |
|---|---|---|
| 14:13:56 | 1 | to provide the witness list -- final witness list due to the |
| 14:14:00 | 2 | extensity of witnesses, which I believe they provide to Mr. |
| 14:14:08 | 3 | Gardner. |
| 14:14:08 | 4 | But on May the 1st, they rest, and I was denied my |
| 14:14:14 | 5 | right to testify on the stand and my witnesses -- I authorized |
| 14:14:21 | 6 | Ms. Williams to draw up the witness list.  I believe that was |
| 14:14:24 | 7 | about 25 to 30 witness because the witness already the government |
| 14:14:30 | 8 | called, and there were some of them on my list.  But I don't |
| 14:14:37 | 9 | understand why they deny my right to present my witness in my |
| 14:14:40 | 10 | defense and my right to testify on my defense, on my behalf.  And |
| 14:14:45 | 11 | that I was told that some of my witnesses were going to testify |
| 14:14:54 | 12 | against me, according to Mr. Gardner, which I don't know. |
| 14:14:58 | 13 | And I'm going to try -- I still want you, this court -- |
| 14:15:04 | 14 | come to this -- I'm prepared in closing arguments -- |
| 14:15:04 | 15 | MR. LECHTENBERGER:  Don't tell him -- |
| 14:15:08 | 16 | DEFENDANT TREVINO-MORALES:  I'm sorry. |
| 14:15:08 | 17 | THE COURT:  That's all right, sir. |
| 14:15:11 | 18 | DEFENDANT TREVINO-MORALES:  And I think he was right. |
| 14:15:12 | 19 | He didn't come prepared for this trial, Mr. Finn, and I'm sorry |
| 14:15:15 | 20 | about that.  I'm very sorry that if any bad behavior from my |
| 14:15:21 | 21 | brothers, I apologize for that, too. |
| 14:15:25 | 22 | THE COURT:  Counsel. |
| 14:15:29 | 23 | MR. LECHTENBERGER:  Judge, our position has been that |
| 14:15:31 | 24 | Jose Trevino is not Miguel Trevino.  Jose Trevino is not Omar |
| 14:15:36 | 25 | Trevino.  In fact, even in the PSR, unfortunately, in paragraph |

14:15:42   1   111, it even mentions Jose Trevino's older brother Juan Trevino.

14:15:51   2   At the end of the day, I know that during the trial, from what

14:15:55   3   I've read, Jose Trevino was touched each and every moment by the

14:15:59   4   same paintbrush by the government.  But I can tell you that my

14:16:06   5   reading and what I know about this man is that he's no Zeta.

14:16:11   6            In fact, your Honor, I believe the opposite is true.

14:16:13   7   And by way of example, I'll give you a couple of points here.

14:16:19   8   What we know from Jose Trevino is that he's law-abiding.  He

14:16:25   9   comes to this country in his early 30s, he complies with the law,

14:16:29   10  he becomes a U.S. citizen.  And I'm sure that this court has

14:16:32   11  heard many, many illegal immigration cases.  That's not the case

14:16:35   12  with Jose.

14:16:35   13           We know that he, like many of us, goes out and gets a

14:16:41   14  gun permit, and he does that through the state of Texas.  He does

14:16:43   15  it in a legal proceeding, the way it's supposed to be done.  We

14:16:50   16  know that he has no criminal history, and I think that's

14:16:53   17  significant.  This court, as you probably do on a weekly basis,

14:16:56   18  if not on a daily basis, you see Criminal History Category V, VI.

14:17:01   19  Not the situation with this man.  We know from his letters and I

14:17:05   20  thought the letters were very, very poignant.  I thought they

14:17:08   21  were to the point.  I thought they even tug at some of the

14:17:13   22  heartstrings.  And I thought that the letters were, quite

14:17:16   23  frankly, about as forthright and honest as I've seen in a long

14:17:21   24  time.

14:17:21   25           We know that he's married, he has four children.  He's

14:17:24   1   a soccer coach.  He goes to high school with his daughter.  His

14:17:31   2   family, although they have been ostracized, they're in the back

14:17:35   3   row, they're watching us right now.  And I've made the conscious

14:17:38   4   decision not to call any witnesses just for the sake of brevity

14:17:42   5   as well as because I think that my argument holds weight with the

14:17:45   6   Court.  But they are here to show their support, notwithstanding

14:17:49   7   the fact that Miguel is incarcerated by the Mexican federales,

14:17:55   8   coming into the U.S. soon.  Omar is still on the loose.  That's

14:17:58   9   not Jose.

14:18:00   10          We know through the letters that he takes people on

14:18:05   11   fishing trips, that he gives needy families $300, that he tries

14:18:12   12   to do the right thing each and every day.  And if you consider,

14:18:16   13   your Honor, even in the light most favorable to the government at

14:18:20   14   this time got started in 2008, I mean, the man's 46.  He's a

14:18:24   15   little younger than myself.  So the vast majority of his life,

14:18:27   16   he's been law-abiding.  Now, does that excuse his conduct?

14:18:32   17   Absolutely not, and I'm not trying to excuse his conduct.  I'm

14:18:35   18   just trying to give the Court a little bit better perspective.

14:18:37   19          I want to close this way, Judge.  I want to close this

14:18:44   20   way.  I think the true picture of Jose Trevino is what we've seen

14:18:48   21   in the letters and some of the adjectives that I've pointed out

14:18:51   22   and I had to write them down and to read them back to the Court.

14:18:55   23   Humble, honest, trustworthy, hard-working, loyal, caring.  I

14:19:02   24   mean, any type of benevolent adjective that you can hear, that's

14:19:06   25   in those letters, and that's the true picture of this man.

14:19:11  1          I anticipate the government will ask you for the

14:19:13  2   maximum.  I anticipate Mr. Gardner will give a very eloquent

14:19:17  3   closing and say, give him 240 months, send a message to the

14:19:20  4   United States.  Send a message to Omar.  Send a message to

14:19:26  5   Miguel.  And you very well may do that, your Honor, but I'm going

14:19:30  6   to ask you to take a chance and go against the grain here a

14:19:33  7   little bit.

14:19:33  8          What I put in my sentencing memorandum was to the

14:19:35  9   point, succinct.  I'm going to ask you to give him ten years, 120

14:19:40  10  months.  Under all the just punishments that I've seen in all my

14:19:45  11  short career being a lawyer, for this man right now, ten will do

14:19:51  12  the trick.  That's all I have, Judge.

14:19:54  13          DEFENDANT TREVINO-MORALES:  If I might, your Honor,

14:19:57  14  with all respect, here's the letter that I sent to Mr. Finn.

14:20:07  15          MR. LECHTENBERGER:  I'll take care of that.

14:20:08  16          DEFENDANT TREVINO-MORALES:  Asking for help, begging

14:20:10  17  for help and they're notarized there from Miguel, and he never

14:20:14  18  respond to me.

14:20:19  19          MR. LECHTENBERGER:  I'll take care of that.

14:20:21  20          DEFENDANT TREVINO-MORALES:  I need my family.  Thank

14:20:25  21  you.

14:20:27  22          THE COURT:  Mr. Gardner.

14:20:28  23          MR. GARDNER:  Mr. Lechtenberger's right.  The

14:20:30  24  government is asking for 240 months, not because his guidelines

14:20:33  25  set that but the Court also thinks -- the government also thinks

| | | |
|---|---|---|
| 14:20:36 | 1 | the Court has plenty of grounds under 3553 to grant a 20-year |
| 14:20:40 | 2 | sentence.  When Mr. Lechtenberger says I'm painting Mr. Jose |
| 14:20:45 | 3 | Trevino with the same brush, I'll carry that analogy a little |
| 14:20:49 | 4 | farther because they come from the same bucket of paint. |
| 14:20:51 | 5 | The ability of this defendant to take that money, |
| 14:20:55 | 6 | knowing how it was earned and the price of blood in which it's |
| 14:20:59 | 7 | covered with, fully justifies this court imposing a 20-year |
| 14:21:03 | 8 | sentence, the statutory max.  So whether it's a guideline |
| 14:21:06 | 9 | sentence or it's a variance, the fact that the source and his |
| 14:21:09 | 10 | relationship to the brothers and the activity that he undertook |
| 14:21:13 | 11 | with that money here in the United States, on behalf of his |
| 14:21:15 | 12 | brothers, fully justifies a 20-year sentence.  That's all we |
| 14:21:19 | 13 | have, your Honor. |
| 14:21:20 | 14 | THE COURT:  Probation have anything they wish to state? |
| 14:21:22 | 15 | PROBATION OFFICER:  No, your Honor. |
| 14:21:23 | 16 | THE COURT:  Does anybody else wish to speak at this |
| 14:21:25 | 17 | sentencing? |
| 14:21:26 | 18 | Anything further?  Mr. Trevino?  Mr. Lechtenberger? |
| 14:21:33 | 19 | MR. LECHTENBERGER:  No.  I think we've said what we |
| 14:21:35 | 20 | needed to say.  Thank you, Judge. |
| 14:21:36 | 21 | THE COURT:  Mr. Trevino, nobody in this court has |
| 14:21:40 | 22 | alleged that you are a Zeta.  Nobody's charged you with being a |
| 14:21:46 | 23 | Zeta.  You're charged with moving money of the Zetas, and there's |
| 14:21:54 | 24 | no question in my mind that that was done.  The evidence was |
| 14:22:00 | 25 | pretty overwhelming.  I don't think there was -- there were |

14:22:07  1    probably non-credible people but little non-credible evidence.

14:22:11  2    Didn't even take the jury a long time to convict those that they

14:22:15  3    convicted.

14:22:17  4          The thing that bothers me the most is, did you have a

14:22:24  5    chance to say no?  There are other people in that category that

14:22:33  6    are involved in this lawsuit, and that's one of the things that

14:22:38  7    bothers me the most.  But you did have the opportunity to say no.

14:22:43  8    You just didn't.  And you ended up involving your own family.

14:22:52  9    And whether you knew about these murders or not, whether you knew

14:23:00  10   about all of the other things that were going on, you were the

14:23:04  11   funnel for most of it, and you ended up with all of the horses,

14:23:08  12   and it's just beyond comprehension that you could do all that on

14:23:14  13   your own, as was the defense that you put forward.

14:23:18  14         And I sentence you to 240 months in the custody of the

14:23:23  15   Bureau of Prisons, followed by a three-year term of supervised

14:23:41  16   release.  I place the conditions of supervision in the standing

14:23:46  17   order of this district for all supervision.  In addition to that,

14:23:53  18   the following special conditions.  First off, I find there's a

14:24:01  19   low risk, if any, of future substance abuse, and I waive

14:24:05  20   mandatory drug testing conditions.

14:24:10  21         You will provide the probation officer access to any

14:24:15  22   requested financial information that the probation officer

14:24:19  23   requests.  And you will execute any release to obtain financial

14:24:25  24   information that's requested by the probation officer.  You will

14:24:30  25   disclose all assets and liabilities to the probation officer.

14:24:34   1   You will not transfer, sell, give away, or otherwise convey, any

14:24:38   2   asset without first consulting the probation officer.

14:24:43   3        You will submit your person, property, house,

14:24:46   4   residence, vehicle, papers, computers as defined by state and

14:24:51   5   federal law and other electronic communication, or data storage

14:24:55   6   devices, or media to a search conducted by a United States

14:24:59   7   probation officer.  Failure to submit to such a search may be

14:25:04   8   grounds for revocation of release.  The defendant shall warn any

14:25:08   9   occupant that the premises that the -- that the premises may be

14:25:14   10  searched, the condition -- subject to this condition.  Any search

14:25:17   11  must be conducted at a reasonable time and in a reasonable

14:25:22   12  manner.  And the probation officer may conduct such a search when

14:25:25   13  he or she has a reasonable suspicion that you may have violated a

14:25:28   14  condition of supervision or a violation of law.

14:25:35   15       Because of the length of the sentence and the harm to

14:25:40   16  the family, I will waive the fine in the case.  But I do have to

14:25:45   17  assess a $100 mandatory assessment under the Victims of Crime

14:25:52   18  Act.

14:25:53   19       Counsel, I've had the probation department go through

14:26:00   20  the indictment, and, of course, I will read the forfeiture if you

14:26:14   21  wish.  But what I suggest is we just attach a copy of the

14:26:19   22  forfeiture to the judgment and not read it today, but that's your

14:26:28   23  choice.  I can read it if you wish.

14:26:30   24       MR. LECHTENBERGER:  No.  Your proposition is --

14:26:36   25       THE COURT:  Then I'll give this to the clerk.  And I on

14:26:40   1   the forfeiture declare all of Jose Trevino-Morales' interest in

14:26:45   2   his property as forfeited to the United States.

14:26:52   3           I neglected to do one thing and that was to state that

14:26:57   4   in addition to the presentence report and the supplemental

14:27:00   5   report, I did receive, of course, the downward departure variance

14:27:04   6   request, which I reviewed and the letters I reviewed.

14:27:17   7           MR. GARDNER:  Your Honor, I just want --

14:27:18   8           THE COURT:  Mr. Trevino, I'm going to give you a

14:27:20   9   letter, which merely tells you what the law is, and your lawyer

14:27:27  10   will, of course, tell you what the law is.  But I'm required to

14:27:34  11   tell you that you have 14 days to tell your lawyer to file a

14:27:40  12   notice of appeal if you wish to appeal any part of this case,

14:27:45  13   either the conviction, or sentence, or whatnot.  You must tell

14:27:48  14   him within 14 days so he could file the notice of appeal.

14:27:51  15           Do you understand that?

14:27:52  16           DEFENDANT TREVINO-MORALES:  Yes, sir.  Thank you.

14:27:53  17           MR. GARDNER:  Your Honor, just clarification on the

14:27:54  18   list that you provided for the record.  Was that the superseding

14:27:57  19   indictment containing all of the asset and forfeiture, substitute

14:28:01  20   money judgment?

14:28:03  21           PROBATION OFFICER:  Yes, sir.

14:28:05  22           MR. GARDNER:  Okay.  Just wanted to make sure it was

14:28:07  23   the complete thing that's included in the superseding indictment.

14:28:10  24           PROBATION OFFICER:  In the e-mail.

14:28:11  25           MR. GARDNER:  Thank you.

| | | |
|---|---|---|
| 14:28:12 | 1 | THE COURT:  Well, why don't the two of you look at it. |
| 14:28:14 | 2 | I'm going to make that suggestion to all.  Counsel for the other |
| 14:28:49 | 3 | defendants, I have the same list, but, of course, it has your |
| 14:28:54 | 4 | client's name on it.  The only difference between the one that |
| 14:28:59 | 5 | counsel are looking at over here. |
| 14:29:04 | 6 | MR. WOMACK:  Sir, we have a copy of it. |
| 14:29:06 | 7 | THE COURT:  That's what I thought.  You got it with the |
| 14:29:08 | 8 | probation officer. |
| 14:29:10 | 9 | DEFENDANT TREVINO-MORALES:  Your Honor, I've been -- |
| 14:29:12 | 10 | THE COURT:  Wait, wait.  Don't tell me anything.  Tell |
| 14:29:14 | 11 | your lawyer, please. |
| 14:29:15 | 12 | MR. LECHTENBERGER:  You can't talk.  The Judge is |
| 14:29:20 | 13 | right. |
| 14:29:20 | 14 | DEFENDANT TREVINO-MORALES:  I'm sorry. |
| 14:29:49 | 15 | MR. GARDNER:  Your Honor, with respect to the Court's |
| 14:29:51 | 16 | Exhibit regarding the forfeiture, a couple of comments. |
| 14:29:55 | 17 | Essentially we provided Mr. Hellums the combined properties as |
| 14:29:58 | 18 | relates to Mr. Jose-Trevino, which we're fine with.  And under |
| 14:30:03 | 19 | two, there's the real property located at 163 Rianna Woods in |
| 14:30:07 | 20 | Dale.  That is Mr. Jesus and Mr. "Chevo" Huitron's property, and |
| 14:30:14 | 21 | the government is not seeking that forfeiture, based on Mr. Jesus |
| 14:30:17 | 22 | Huitron's acquittal.  So we would abandon that forfeiture. |
| 14:30:21 | 23 | THE COURT:  All right. |
| 14:30:22 | 24 | MR. GARDNER:  Of most concern to the government, your |
| 14:30:24 | 25 | Honor, page 47 of the -- 47, 48 of the government's superseding |

14:30:30  1  indictment, the government is asking for money judgment and

14:30:33  2  substitute assets, and that is not included within the document

14:30:37  3  the Court proposed to submit.  So we would ask that the money

14:30:41  4  judgment for page 47 and the substituted assets for page 48 be

14:30:45  5  included as part of the asset forfeiture portion of this lawsuit.

14:30:51  6         THE COURT:  It would be helpful if you would have asked

14:30:54  7  before today.  This list is only to list the properties that Jose

14:31:24  8  Trevino's interest are part of.

14:31:28  9         MR. GARDNER:  Yes, sir.

14:31:28  10         THE COURT:  That's all.  Now, if you have your motion

14:31:33  11  to substitute.

14:31:34  12         MR. GARDNER:  To seek a money judgment for the amount

14:31:37  13  of the total.  And I may better let the asset forfeiture

14:31:40  14  attorneys argue this if the Court wants to hear argument.

14:31:43  15         THE COURT:  Well, I got a motion in one of these cases

14:31:46  16  but not in the others.

14:31:49  17         MS. CRUZ-ZAPATA:  May I address the Court, your Honor?

14:31:50  18         THE COURT:  I think you best.

14:31:53  19         MS. CRUZ-ZAPATA:  Your Honor, I'm Diana Cruz-Zapata.

14:31:58  20  I'm one of the asset forfeiture AUSAs in the U.S. Attorney's

14:32:02  21  Office.

14:32:02  22         When the defense counsel waived a jury on all

14:32:05  23  properties, including in it -- and then, the money judgment is to

14:32:09  24  be determined in front of the Court in a hearing such as this.

14:32:13  25  So that is the reason why we did not file motion for money

14:32:16   1   judgment ahead of time, in order to present evidence for the

14:32:20   2   Court now to make that determination.

14:32:25   3          THE COURT:  Well, you're very helpful.  What is the

14:32:30   4   money judgment for substitution of the interest of the

14:32:35   5   properties?

14:32:36   6          MS. CRUZ-ZAPATA:  The money judgment is a calculation,

14:32:38   7   your Honor, of all the proceeds and the property involved.

14:32:40   8          THE COURT:  Correct.  Somebody ought to tell me what it

14:32:42   9   is.

14:32:43   10          MS. CRUZ-ZAPATA:  Okay.  Well, the money judgment in

14:32:45   11   terms of what the calculations are includes the 25 million that

14:32:50   12   we assert is in the PSR, along with the -- it's above the 50

14:32:56   13   million that has been testified to today with regards to the

14:33:00   14   confidential informant named "Pitufo."  And the substitute assets

14:33:04   15   applies when -- if the money judgment is granted by the Court,

14:33:08   16   then we could go after substitute assets in order to apply

14:33:11   17   towards the money judgment.  But that's what the money judgment

14:33:14   18   represents, your Honor.

14:33:15   19          THE COURT:  Well, but the parties have the right to

14:33:18   20   contest that, and at this point in time, they don't even know

14:33:23   21   what to contest because the Court doesn't know what you're asking

14:33:25   22   for.

14:33:26   23          MS. CRUZ-ZAPATA:  I apologize to the Court --

14:33:28   24          THE COURT:  You don't have to apologize to the Court.

14:33:30   25   You filed one thing in Mr. Colorado-Cessa's for specific things

| | | |
|---|---|---|
| 14:33:37 | 1 | to do with the airplanes, but you did not file anything in any of |
| 14:33:41 | 2 | the other cases that I'm aware. |
| 14:33:43 | 3 | MS. CRUZ-ZAPATA:  I filed -- that's a civil case |
| 14:33:45 | 4 | against Mr. Colorado-Cessa's assets, civil asset forfeiture case. |
| 14:33:50 | 5 | So that's separate and apart, in that regard, from this case. |
| 14:33:54 | 6 | However, your Honor, we did file on the defendants that |
| 14:33:58 | 7 | have pled guilty, we have filed motions for preliminary order and |
| 14:34:02 | 8 | money judgments on those.  But with regards to the defendants |
| 14:34:05 | 9 | that went to trial, we did not file anything at this point |
| 14:34:08 | 10 | because of the hearing that we're having today. |
| 14:35:12 | 11 | THE COURT:  Mr. Trevino, if you wish, you can have a |
| 14:35:14 | 12 | seat. |
| 14:35:14 | 13 | DEFENDANT TREVINO-MORALES:  Thank you, sir. |
| 14:35:16 | 14 | MR. LECHTENBERGER:  Could I also sit down, Judge, or do |
| 14:35:18 | 15 | you want me to stand? |
| 14:35:19 | 16 | THE COURT:  Yes, sir. |
| 14:35:20 | 17 | MR. LECHTENBERGER:  Thank you, Judge. |
| 14:35:24 | 18 | THE COURT:  About as long as it takes an oak tree to |
| 14:35:28 | 19 | grow. |
| 14:36:08 | 20 | Mr. Lechtenberger. |
| 14:36:10 | 21 | MR. LECHTENBERGER:  Sir. |
| 14:36:11 | 22 | THE COURT:  The government is seeking a motion for an |
| 14:36:14 | 23 | entry of a money judgment in all of the cases wherein the |
| 14:36:17 | 24 | defendants pled guilty of $60 million.  I suspect that it's like |
| 14:36:26 | 25 | many of these judgments that we have in the pornography cases for |

| | | |
|---|---|---|
| 14:36:34 | 1 | $100 million that's never going to be paid, but that's what they |
| 14:36:41 | 2 | have requested as a result of the plea agreement. |
| 14:36:49 | 3 | And it is -- it's a motion that in the event that the |
| 14:36:52 | 4 | properties aren't obtained in the interest of the defendant and |
| 14:37:03 | 5 | not obtained by the government, then this would be a money |
| 14:37:07 | 6 | judgment that would protect up to $60 million.  It's a joint and |
| 14:37:14 | 7 | several liability with all the defendants who have been convicted |
| 14:37:17 | 8 | in this case or who have pled guilty. |
| 14:37:24 | 9 | So surprise to me, as well as surprise to you.  If you |
| 14:37:27 | 10 | wish, I can schedule a supplemental hearing if you need time to |
| 14:37:32 | 11 | take that, or you can, of course, agree to it as a joint and |
| 14:37:38 | 12 | several liability to the others. |
| 14:37:43 | 13 | MR. LECHTENBERGER:  Would it be sufficient if I went |
| 14:37:46 | 14 | with the third option, your Honor, and objected under procedural |
| 14:37:48 | 15 | and substantive grounds as to any $60 million joint and several |
| 14:37:53 | 16 | liability?  Or would that entail having a formal hearing again, |
| 14:37:58 | 17 | which I would like to avoid? |
| 14:38:01 | 18 | I understand that if you overrule my request and go |
| 14:38:05 | 19 | ahead and order the 60 million joint and several, and I |
| 14:38:09 | 20 | understand how the forfeiture provisions have worked, however, I |
| 14:38:12 | 21 | just have a real issue with a $60 million -- he does his 20 |
| 14:38:17 | 22 | years, he gets out on supervised release, and then, the Financial |
| 14:38:21 | 23 | Litigation Unit out of Washington, D.C. comes after him.  And |
| 14:38:24 | 24 | then, for the rest of his life, if he lives to be 100 years old, |
| 14:38:28 | 25 | will always have this over him. |

23

```
14:38:30   1              THE COURT:  Well, that's certainly a theoretical
14:38:34   2   possibility.  I've never seen the unit do anything.  But that's
14:38:41   3   the way it -- that's the alternative.
14:38:44   4              What says the government?  The government want a
14:38:49   5   separate hearing to where they can justify the $60 million as a
14:38:54   6   substitute judgment?  Or is the government satisfied with just
14:38:59   7   the objection by the defendant?
14:39:00   8              MS. CRUZ-ZAPATA:  We stand by the objection by the
14:39:03   9   defendant, your Honor.  And just so it's clear on the record that
14:39:06  10   the money judgment was included in the notice of forfeiture of
14:39:10  11   the indictment.
14:39:10  12              THE COURT:  No.  I understand that.
14:39:11  13              MS. CRUZ-ZAPATA:  Okay.  It was in all the evidence
14:39:14  14   that we have, your Honor, so we're not going to separate it.
14:39:17  15              THE COURT:  All right.  Then I will enter, over the
14:39:20  16   objection of the defendant, the money judgment of 60 million,
14:39:24  17   which will be a joint and several liability with all defendants
14:39:30  18   convicted in this case.
14:39:35  19              Counsel, I assume that Mr. Trevino, if you want to ask
14:39:39  20   him, he's going to want to be as close to Dallas as possible?
14:39:44  21              MR. LECHTENBERGER:  Yes, sir.  In fact, you read my
14:39:45  22   mind again, your Honor.  Number five in my sentencing memorandum,
14:39:48  23   I ask for BOP placement somewhere preferably in Texas.
14:39:52  24              THE COURT:  Seagoville is the closest.
14:39:54  25              MR. LECHTENBERGER:  That would be perfect, your Honor.
```

14:39:56   1          THE COURT:  You understand, Mr. Trevino, I don't have

14:39:57   2   the authority to order them to put you there.  My judgment is,

14:40:02   3   though, that they will put you there, and they'll put you there

14:40:05   4   as soon as, wherever you go, they make a determination you're not

14:40:08   5   a danger to yourself or anybody else, they'll get you as close to

14:40:13   6   your family.  So hopefully you'll get to see Seagoville, but if

14:40:18   7   you don't get Seagoville, don't get mad.  Get with your

14:40:21   8   counselor, tell them about your family, and I'm sure they'll get

14:40:25   9   you to Seagoville very quickly.

14:40:28  10          DEFENDANT TREVINO-MORALES:  Thank you, sir.  And I

14:40:29  11   apologize to the Court and thank you.

14:40:31  12          THE COURT:  All right.

14:40:33  13          MR. LECHTENBERGER:  Your Honor, one last thing.

14:40:34  14          Just for purposes of any type of appeal, I understand

14:40:38  15   the 240 months and how the Court got to that, but I would object

14:40:41  16   procedurally and substantive as to the reasonableness of the

14:40:44  17   sentence.  That's all I have to say.

14:40:45  18          THE COURT:  Okay.  And the objection is overruled.  But

14:40:47  19   you didn't read -- I didn't read your mind well enough.  I'm

14:40:51  20   going to seal the presentence investigation.  Nobody can come in

14:40:54  21   and read about Mr. Trevino or his family.  It becomes part of the

14:40:59  22   record if there is an appeal.

14:41:04  23          MR. LECHTENBERGER:  Thanks, Judge.

14:41:05  24          THE COURT:  And I'm going to attach the addendum there,

14:41:09  25   and the government may, of course, use theirs for official

```
14:41:12   1   purposes.
14:41:16   2            All right.  I remand Mr. Trevino.  Thank you, counsel.
14:41:21   3            MR. LECHTENBERGER:  Can I stand down, your Honor?
14:41:22   4            THE COURT:  You may.
14:41:23   5            MR. LECHTENBERGER:  Thank you, sir.
           6            (End of proceedings.)
           7
           8
           9
          10
          11
          12
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```

1                              * * * * * *

2

3

4   UNITED STATES DISTRICT COURT)

5   WESTERN DISTRICT OF TEXAS    )

6

7       I, LILY I. REZNIK, Official Court Reporter, United States

8   District Court, Western District of Texas, do certify that the

9   foregoing is a correct transcript from the record of proceedings

10  in the above-entitled matter.

11      I certify that the transcript fees and format comply with

12  those prescribed by the Court and Judicial Conference of the

13  United States.

14      WITNESS MY OFFICIAL HAND this the 23rd day of October, 2013.

15

16

17                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
18                              Official Court Reporter
                                United States District Court
19                              Austin Division
                                501 W. 5th Street, Suite 4153
20                              Austin, Texas 78701
                                (512)391-8792
21                              Certification No. 4481
                                Expires:  12-31-14
22

23

24

25